**Brian C. Hickman, OSB No. 031096**
*bhickman@gordon-polscer.com*
**Joshua E. Tabak, OSB No. 214668**
*jtabak@gordon-polscer.com*
**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Road
Suite 560
Tigard, Oregon 97223
Telephone:      (503) 242-2922
Facsimile:      (503) 242-1264

*Attorney for Plaintiff Philadelphia
Indemnity Insurance Company*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ANNETTE M. STILL, MELVIN FARRIS, ETHEL WATSON, ELLEN BROWN, ESTATE OF LUCY SCHNEIDER BY AND THROUGH ITS PERSONAL REPRESENTATIVE GABRIELLE DEEM, JANICE LOPEZ, LAURA HOWARD, CAROLYN JOHNSON, SHEILA LAMBERT, LAWRENCE PARKER, NATALIE STRICKLAND, DENNIS WILSON, PAUL OSTERLUND, DOUGLAS BENEZRA, LINDA JONES, JAMES COHAN, ELIZABETH GONZALES, JOHN GHORMLEY,  ISRAEL HOWARD (BY AND THROUGH LAURA HOWARD, HIS CUSTODIAL GAURDIAN), EUGENE IWANSKI, NANCY KINCADE, LEROY RAMSEY, BARBARA REED, PATRICK RILEY, ANNA SCHNEIDER, JAN WONG, LAURA HOWARD, AND INCOME PROPERTY MANAGEMENT CO., MIDDLESEX INSURANCE COMPANY, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:23-cv-00909<br><br>COMPLAINT<br><br>DECLARATORY RELIEF<br>28 U.S.C. 2201 |

**COMPLAINT**                                                                                 **Page 1**

NORTHWEST HOUSING ALTERNATIVES,)
INC., AND ROSEMONT SENIOR          )
HOUSING ASSOCIATES, LP,            )
                                   )
                                   )
        Defendants.                )
_____    )

COMES NOW the Plaintiff, Philadelphia Indemnity Insurance Company ("Plaintiff") by and through its attorneys of record, Gordon & Polscer, L.L.C., and as a Complaint against Defendants states as follows:

<strong>PARTIES AND JURISDICTION</strong>

1.

Plaintiff is a company organized under the laws of the State of Pennsylvania, with its principal place of business in Bala Cynwyd, Pennsylvania.

2.

Upon information and belief, Annette M. Still is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

3.

Upon information and belief, Melvin Farris is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

4.

Upon information and belief, Ethel Watson is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

5.

Upon information and belief, Ellen Brown is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

/ / /

/ / /

**COMPLAINT**                                                    **Page 2**

6.

Upon information and belief, Lucy Schneider was a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

7.

Upon information and belief, Gabrielle Deem is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

8.

Upon information and belief, Janice Lopez is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

9.

Upon information and belief, Laura Howard is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

10.

Upon information and belief, Carolyn Johnson is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

11.

Upon information and belief, Sheila Lambert is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

12.

Upon information and belief, Lawrence Parker is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

13.

Upon information and belief, Natalie Strickland is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

/ / /

/ / /

**COMPLAINT**                                                                                          **Page 3**

14.

Upon information and belief, Dennis Wilson is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

15.

Each of these individual defendants, identified in Paragraphs 2-14, shall hereinafter be referred to as the "Underlying Injured Plaintiffs".

16.

Upon information and belief, Paul Osterlund is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

17.

Upon information and belief, Douglas Benezra is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

18.

Upon information and belief, Linda Jones is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

19.

Upon information and belief, James Cohan is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

20.

Upon information and belief, Elizabeth Gonzales is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

21.

Upon information and belief, John Ghormley is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

/ / /

/ / /

22.

Upon information and belief, Israel Howard is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

23.

Upon information and belief, Eugene Iwanski is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

24.

Upon information and belief, Nancy Kincade is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

25.

Upon information and belief, Leroy Ramsey is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

26.

Upon information and belief, Barbara Reed is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

27.

Upon information and belief, Patrick Riley is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

28.

Upon information and belief, Anna Schneider is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

29.

Upon information and belief, Jan Wong is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

/ / /

/ / /

30.

Upon information and belief, Laura Howard is a resident of Multnomah County, Oregon who at all relevant times resided in Multnomah County.

31.

Upon information and belief, Income Property Management Co. is a company organized under the laws of the State of Oregon, with its principal place of business in Oregon.

32.

Upon information and belief, Middlesex Insurance Company is a company organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in Wisconsin.

33.

Upon information and belief, Northwest Housing Alternatives, Inc. is a company organized under the laws of the State of Oregon, with its principal place of business in Oregon.

34.

Upon information and belief, Rosemont Senior Housing Associates, LP is a company organized under the laws of the State of Oregon, with its principal place of business in Oregon.

35.

Jurisdiction of this court is proper pursuant to 28 U.S.C. § 1332 given the diversity of citizenship of the parties and because the amount in controversy exceeds the statutory minimum of $75,000 in 28 U.S.C. § 1332.

36.

A present and actual controversy exists regarding Plaintiff's obligations to Income Property Management Co. ("Income"), Northwest Housing Alternatives, Inc. ("NHA"), and Rosemont Senior Housing Associates, LP ("Rosemont") pursuant to the applicable Philadelphia Indemnity Insurance Company Commercial General Liability Policy under which these entities might qualify

**COMPLAINT**                                                                                          **Page 6**

as insureds (the "Policy", Policy No. PHPK2188778[1], is attached hereto as **Exhibit 1**). Plaintiff seeks and is entitled to a declaration of the rights of the parties pursuant to FRCP 57 and 28 U.S.C. § 2201.

37.

Jurisdiction and venue are proper in the U.S. District Court, District of Oregon, Portland Division because the underlying claims concern a property located in Multnomah County; Defendants are parties to lawsuits pending in Multnomah County Circuit Court; and the Policies were obtained in Oregon, for Oregon businesses.

## FACTUAL BACKGROUND

38.

Each of the underlying plaintiffs, at all relevant times, was a resident at the Rosemont Court Apartments, 597 North Dekum Street, Portland, Oregon (the "Premises"). Each of the underlying plaintiffs has filed a lawsuit against some combination of Income, NHA, and/or Rosemont, alleging that those entities are liable for injuries Underlying Plaintiffs allegedly have suffered due to their contraction of Legionnaires' Disease while living at the Premises. Each of those lawsuits, hereinafter the "Underlying Injured Plaintiffs' Lawsuits", are attached hereto as **Exhibits 2-8**. Each of the Underlying Lawsuits arise out of the same set of facts: Underlying Plaintiffs allegedly inhaled the *Legionella* bacteria while residing at the Premises owned or operated by Income, NHA, and/or Rosemont, causing them to become infected with Legionnaires' Disease.

39.

Upon information and belief, approximately forty-five lawsuits, in addition to the Underlying Injured Plaintiffs' Lawsuits, arising out of the same *Legionella* outbreak, have also

---

[1] Note that the Property Schedule, not at issue here and totaling over 1,000 pages, is not included. If the Court believes the entirety of the policy is required to come to a decision, Plaintiff will provide it.

been filed in Multnomah County. However, those lawsuits allege no bodily injury, alleging only breach of contract and emotional distress/worry. The Plaintiffs in these forty-five lawsuits shall hereinafter be referred to as the "Underlying Un-Injured Plaintiffs." Upon information and belief, at least thirty of those forty-four lawsuits have settled.[2] Each of those lawsuits, hereinafter the "Underlying Un-Injured Plaintiffs' Lawsuits", are attached hereto as **Exhibits 9-52**.

40.

Coverage owed to Income, NHA, and/or Rosemont by Plaintiff, if any, is governed by the terms of the Policy. The Policy provides insurance, subject to the terms, conditions, limitations, endorsements and exclusions contained in the Policy, including the following provisions:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

---

[2] The fifteen Underlying Uninjured Plaintiffs who, upon information and belief, have not settled are named Defendants in this action.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

***

/ / /

**COMPLAINT**                                                                 **Page 9**

**2. Exclusions**

This insurance does not apply to:

    **f.**  Pollution

        **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

            **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

                **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

                **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

                **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

            **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

            **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

                **(i)** Any insured; or

                **(ii)** Any person or organization for whom you may be legally responsible; or

            **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

\*\*\*

**SECTION V – DEFINITIONS**

* * *

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

41.

Plaintiff has agreed to defend Income, NHA, and Rosemont against the Underlying Injured Plaintiffs' Lawsuits, subject to a reservation of rights. Plaintiff has denied coverage to Income, NHA, and Rosemont in relation to the Underlying Un-Injured Plaintiffs' Lawsuits.

42.

A dispute exists between Plaintiff and Defendants concerning the scope and extent of Plaintiff's duty to defend and indemnify against both the Underlying Injured Plaintiffs' Lawsuits and the Underlying Un-Injured Plaintiffs' Lawsuits.

## I.    FIRST CLAIM FOR RELIEF

### A. Declaratory Judgment –No Duty to Defend as to Underlying Injured Plaintiffs

43.

Plaintiff incorporates by reference the allegations in Paragraphs 1-42.

44.

An actual controversy and dispute exists between Plaintiff and Defendants as to whether Plaintiff is relieved of its obligation to provide a defense to Income, NHA, and Rosemont against

the claims in the Underlying Injured Plaintiffs' Lawsuits pursuant to the Pollution Exclusion in the Policy.

45.

The Policy states that insurance does not apply to "bodily injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants". "Pollutants" is defined, in relevant part, as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

46.

The injuries and damages alleged in the Underlying Injured Plaintiffs' Lawsuits arise out of the discharge, dispersal, seepage, migration, release or escape of water droplets or vapors contaminated with *Legionella* bacteria. The *Legionella* bacteria and/or these droplets or vapors are "pollutants" under the Policy.

47.

A number of the Underlying Injured Plaintiffs' Lawsuits, in an attempt to manipulate the obligations of their adversary's insurance companies, allege that "The *Legionella* bacteria is not a pollutant". These allegations state legal conclusions, and are irrelevant to this coverage action. A plaintiff in an underlying lawsuit may not include a list of conclusory statements as to how the cause of loss should be defined for the sole purpose of opening the pockets of the insurer of the party they are suing. Additionally, Underlying Injured Plaintiffs , to the extent they do allege that *Legionella* bacteria is not a pollutant, have no basis or authority to make that assertion. What constitutes a pollutant under the Policy is a legal question governed by the terms of the Policy and the analysis this Court elects to apply. Underlying Injured Plaintiffs, who under information and belief had not even reviewed the Policy, cannot use irrelevant legal assertions in their complaints to saddle other party's insurers with obligations which are not required by policy or law.

**COMPLAINT**                                                                                    **Page 13**

48.

As previously alluded to, the Underlying Injured Plaintiffs allege, either specifically or impliedly, that they contracted Legionnaires' Disease through the inhalation of *Legionella* bacteria from a contaminated water source. *See*, for example, paragraph 19 of the Underlying Lawsuit filed by Jane Foreman, attached as **Exhibit 9**: "A person becomes infected with Legionella when they breathe in steam or mist or aerosolized water from a contaminated water system." The question before this Court then is whether *Legionella* bacteria and/or the steam or mist or aerosolized water which Underlying Injured Plaintiff's inhaled and which was contaminated with *Legionella* bacteria constitutes a "pollutant" under the Policy. More specifically, were those inhaled materials "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals (or) waste"?

49.

The materials inhaled by Underlying Injured Plaintiff's clearly were "irritants" or "contaminants". These terms are utilized in the Policy to help define "pollutants", but are not defined themselves. Oregon courts have handled these types of cases by employing a plain meaning analysis. *See Colony Ins. Co. v. Victory Constr. LLC*, 239 F. Supp. 3d 1279, 1286 (D. Ore. 2017) (concluding that "carbon monoxide" was an "irritant" or "contaminant", and thus a "pollutant", by looking to the dictionary definitions of each of those terms.) Of particular relevance, the court in *Colony Ins. Co* stated:

> The Policy does not define "irritant" or "contaminant." Where a policy does not define a particular term, the Court must presume that the words have "their plain, ordinary meanings." Tualatin Valley, 208 Or. App. at 159, 144 P.3d at 993 (citing Hoffman, 313 Or. 469-70, 836 P.2d 703). Dictionary definitions can be helpful in ascertaining the plain meaning of undefined terms in the Policy. Ortiz v. State Farm Fire & Cas. Co., 244 Or. App. 355, 360, 260 P.3d 678, 681 (2011) (explaining that a common aid of interpretation is the dictionary); see also S. Cal. Counseling Ctr. v. Great Am. Ins. Co., No. 14-56169, 667 Fed. Appx. 623, 2016 U.S. App. LEXIS 11825, 2016 WL 3545350, at *1 (9th Cir. June 28, 2016) (relying on dictionary definitions to determine the plain meaning of a term in an insurance policy exclusion).

**COMPLAINT**                                                                    **Page 14**

Merriam-Webster's Dictionary defines irritant as "something that irritates or excites." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/irritant (last visited January 19, 2017). The Merriam-Webster Medical Dictionary defines irritant as "causing irritation, specifically tending to produce inflammation." Id. One of the medical definitions of "irritate" is "to cause (an organ or tissue) to be irritable." Merriam Webster.com, https://www.merriam-webster.com/dictionary/irritates (last visited January 19, 2017). Id. For example, "harsh soaps may irritate the skin." Id. The Oxford English Dictionary defines irritant as "an irritant substance, body, or agency" such as a poison which produces irritation and "anything that stimulates an organ to its characteristic vital action." Irritant, Oxford English Dictionary (2d ed. 2016).

As for "contaminant," Merriam-Webster's Dictionary defines the term as "something that contaminates." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/contaminant (last visited January 19, 2017). To "contaminate" means to "soil, stain, corrupt, or infect by contact or association," "to make inferior or impure by admixture," or "to make unfit for use by the introduction of unwholesome or undesirable elements." Id. Similarly, the Oxford English Dictionary defines "contaminant" as "that which contaminates," and "contaminate" as "to render impure by contact or mixture; to corrupt, defile, pollute, sully, taint, infect." Contaminant and Contaminate, Oxford English Dictionary (2d ed. 2016).

50.

The *Colony Ins. Co* court went on to look up the dictionary definition of "carbon monoxide". Plaintiff points this Court to the Mayo Clinic, which states that "Legionnaires' disease is a severe form of pneumonia — lung inflammation usually caused by infection. It's caused by a bacterium known as legionella. Most people catch Legionnaires' disease by inhaling the bacteria from water or soil." *See* Mayo Clinic, *Legionnaires' Disease,* https://www.mayoclinic.org/diseases-conditions/legionnaires-disease/symptoms-causes/syc-20351747 (last visited Feb. 24, 2023). Further, the Center for Disease Control and Prevention states "After *Legionella* grows and multiplies in a building water system, water containing *Legionella* can spread in droplets small enough for people to breathe in. People can get Legionnaires' disease or Pontiac fever when they breathe in small droplets of water in the air that contain the bacteria." *See* Center for Disease Control and Prevention, *Legionella (Legionnaires' Disease and Pontiac Fever*, https://www.cdc.gov/legionella/about/causes-transmission.html (last visited Feb. 24, 2023). These definitions are consistent with the allegations contained in numerous of the Underlying

**COMPLAINT**                                                                                           **Page 15**

Injured Plaintiffs' Lawsuits, which frequently refer to the "contaminated water" Underlying Plaintiffs were exposed to which caused their injuries (*See*, for example, paragraphs 10, 11, 12, 13, and 24 of the Underlying Injured Plaintiff Lawsuit filed by Annette Still, attached as **Exhibit 8**).

51.

In the present case, it is clear based on the definitions of Legionnaires' Disease/*Legionella* bacteria, along with the Underlying Injured Plaintiff Lawsuits themselves, that Underlying Injured Plaintiffs suffered their alleged bodily injuries as a result of the inhalation of water droplets contaminated with *Legionella* bacteria. Applying the plain meaning analysis employed by Oregon courts, and utilizing a common sense reading of these definitions, the *Legionella* bacteria and/or the water droplets it was contained in were *contaminants* (or, in the alternative, irritants). The bacteria and/or the contaminated water droplets, by definition and according to Underlying Injured Plaintiff's allegations, caused disease, infection, inflammation, irritation, and corruption. Therefore, under the Policy, the "bodily injury" arose out of a "pollutant", and no coverage exists.

52.

Therefore, based on the allegations contained in the Underlying Injured Plaintiffs' Lawsuits, in conjunction with the Pollution Exclusion contained in the Policy, Plaintiff does not owe Income, NHA, or Rosemont any duty to defend against the Underlying Injured Plaintiffs' Lawsuits.

53.

Although Plaintiff has agreed to defend Income, NHA, and Rosemont in the Underlying Injured Plaintiffs' Lawsuits, Plaintiff reserved all its rights, including the right to withdraw from the defense at any time.  Accordingly, and reserving the right to assert additional bases for the complete denial or limitation of any defense obligation to Income, NHA, and Rosemont, Plaintiff

is entitled to a declaration that it is not obligated to defend Income, NHA, and Rosemont against the claims in the Underlying Injured Plaintiffs' Lawsuits.

**B.    Declaratory Judgment –No Duty to Defend as to Underlying Un-Injured Plaintiffs**

54.

Plaintiff incorporates by reference the allegations in paragraphs 1-53.

55.

An actual controversy and dispute exists between Plaintiff and Defendants as to whether Plaintiff is relieved of its obligation to provide a defense to Income, NHA, and Rosemont against the claims in the Underlying Un-Injured Plaintiffs' Lawsuits pursuant to the Pollution Exclusion and the lack of "bodily injury" as defined in the Policy.

56.

The alleged injuries and damages stated in the Underlying Un-Injured Plaintiffs' Lawsuits arise out of the discharge, dispersal, seepage, migration, release or escape of water droplets or vapors contaminated with *Legionella* bacteria. Therefore, Plaintiff specifically incorporates the preceding paragraphs, paragraphs 43-53, as those assertions apply in equal force to the Underlying Un-Injured Plaintiffs' Lawsuits. For the reasons stated above, the Pollution Exclusion entitles Plaintiff to a declaration that it is not obligated to defend Income, NHA, and Rosemont against the claims in the Underlying Un-Injured Plaintiffs' Lawsuits.

57.

However, in addition to the Pollution Exclusion, Plaintiff likewise holds no obligation to defend Income, NHA, and Rosemont against the claims in the Underlying Un-Injured Plaintiffs' Lawsuits because those claims fail to allege any "bodily injury."

/ / /

**COMPLAINT**                                                                    **Page 17**

58.

As quoted above, the Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

59.

None of the Underlying Un-Injured Plaintiffs' Lawsuits allege that any Underlying Un-Injured Plaintiff contracted Legionnaires Disease. In fact, the Underlying Un-Injured Plaintiffs' Lawsuits specifically allege that "According to the CDC, the incubation period for the *Legionella* bacteria to become symptomatic in a person is from two to fourteen days after exposure to the contaminated water source." Therefore, per Underlying Un-Injured Plaintiffs' own complaints, there is no possibility that Underlying Un-Injured Plaintiffs ever become symptomatic in the future due to their potential exposure to the *Legionella* bacteria.

60.

The Underlying Un-Injured Plaintiffs' Lawsuits only generally allege "emotional distress due to the potential of contracting Legionnaires' Disease and suffering illness or death." Worry over the *potential* of suffering illness does not constitute "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

61.

It should also be noted that the mere inhalation of an unwanted material, without *any* symptoms, does not constitute "bodily injury." *See, e.g., Forbidden Fruit Ciderhouse, Ltd. Liab. Co. v. Ohio Sec. Ins. Co.*, No. 3:20-cv-00844-AC, 2022 U.S. Dist. LEXIS 30708, at *18 (D. Or. Jan. 5, 2022) (rejecting argument by insured that ingesting an unwanted substance constitutes 'bodily injury' as defined within the Policies). Therefore, the allegations contained within the Underlying Un-Injured Plaintiffs' Lawsuits do not constitute "bodily injury" and Plaintiff is entitled to a declaration that it is not obligated to defend Income, NHA, and Rosemont against the claims in the Underlying Un-Injured Plaintiffs' Lawsuits.

## II.    SECOND CLAIM FOR RELIEF

**A. Declaratory Judgment – No Duty to Indemnify as to Underlying Injured Plaintiffs**

62.

Plaintiff incorporates by reference the allegations in paragraphs 1-61.

63.

An actual controversy and dispute exists between Plaintiff and Defendants as to whether Plaintiff is relieved of its obligation to provide indemnity to Income, NHA, and Rosemont against the claims in the Underlying Injured Plaintiffs' Lawsuits pursuant to the Pollution Exclusion of the Policy.

64.

Plaintiff has no duty to indemnify Income, NHA, and Rosemont for sums that Income, NHA, and Rosemont may become legally obligated to pay as damages because of "bodily injury" or "property damage" to which the Policy does not apply.

65.

For the reasons stated in Plaintiff's First Claim for Relief, if Underlying Injured Plaintiffs can be awarded any damages in the Underlying Lawsuits, it will be based on the discharge, dispersal, seepage, migration, release or escape of "pollutants." Therefore, Plaintiff can have no duty to indemnify Income, NHA, and Rosemont in the Underlying Inured Plaintiffs' Lawsuits.

66.

In the alternative, if Plaintiff does have any duty to indemnify Income, NHA, and Rosemont, that duty must necessarily be limited to any damages which still *would* have taken place, in whole or in part, regardless of the "discharge, dispersal, seepage, migration, release or escape of "'pollutants.'"

**B. Declaratory Judgment – No Duty to Indemnify as to Underlying Un-Injured Plaintiffs**

/ / /

**COMPLAINT**                                                                                          **Page 19**

67.

Plaintiff incorporates by reference the allegations in paragraphs 1-66.

68.

An actual controversy and dispute exists between Plaintiff and Defendants as to whether Plaintiff is relieved of its obligation to provide indemnity to Income, NHA, and Rosemont against the claims in the Underlying Un-Injured Plaintiffs' Lawsuits pursuant to the Pollution Exclusion of the Policy.

69.

Plaintiff has no duty to indemnify Income, NHA, and Rosemont for sums that Income, NHA, and Rosemont may become legally obligated to pay as damages because of "bodily injury" or "property damage" to which the Policy does not apply.

70.

For the reasons stated in Plaintiff's First Claim for Relief, if Underlying Un-Injured Plaintiffs can be awarded any damages in the Underlying Lawsuits, it will be based on the discharge, dispersal, seepage, migration, release or escape of "pollutants." Therefore, Plaintiff can have no duty to indemnify Income, NHA, and Rosemont in the Underlying Un-Inured Plaintiffs' Lawsuits.

71.

In the alternative, if Plaintiff does have any duty to indemnify Income, NHA, and Rosemont, that duty must necessarily be limited to any damages which still *would* have taken place, in whole or in part, regardless of the "discharge, dispersal, seepage, migration, release or escape of "pollutants."

72.

Additionally, Plaintiff can have no obligation to indemnify Income, NHA, and Rosemont for any settlement or damages awarded to Underlying Un-Injured Plaintiffs because Underlying Un-Injured Plaintiffs suffered no "bodily injury."

**COMPLAINT**                                                                 **Page 20**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment in its favor and against Defendants as follows:

1.    A declaration that Plaintiff has no duty to defend Income, NHA, or Rosemont with respect to any of the Underlying Injured Plaintiffs' Lawsuits;

2.    A declaration that Plaintiff has no duty to defend Income, NHA, or Rosemont with respect to any of the Underlying Un-Injured Plaintiffs' Lawsuits;

3.    A declaration that Plaintiff has no duty to indemnify Income, NHA, or Rosemont with respect to any of the Underlying Injured Plaintiffs' Lawsuits;

4.    A declaration that Plaintiff has no duty to indemnify Income, NHA, or Rosemont with respect to any of the Underlying Un-Injured Plaintiffs' Lawsuits;

5.    Or, in the alternative to the second claim for relief, a declaration that, if Plaintiff might have a duty to indemnify Income, NHA, or Rosemont, that said duty is limited to indemnity for any damages for "bodily injury" which would have occurred regardless of the alleged pollution;

6.    An award of all costs and expenses herein; and

7.    For such other relief as this court deems appropriate.

DATED this 22nd Day of June, 2023.

Respectfully Submitted:

**GORDON & POLSCER, L.L.C.**

By: *s/ Brian C. Hickman*
Brian C. Hickman, OSB No. 031096
*bhickman@gordon-polscer.com*

By: *s/ Joshua E. Tabak*
Joshua E. Tabak, OSB No. 214668
*jtabak@gordon-polscer.com*

*Attorney for Plaintiff*
*Philadelphia Indemnity Insurance Company*